IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § § | | |
| RICHARD G. NOVAK, § § | Case No. 08-41029 | |
| Debtor. § § § | (Chapter 7) | EOD 09/17/2009 |
| JOHN BURFORD, § § § | | |
| Plaintiff, § § | | |
| v. § § | Adv. No. 08-4114 | |
| RICHARD G. NOVAK, § § § | | |
| Defendant. § | | |

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

In this adversary proceeding, the Plaintiff objects to the dischargeability of the Defendant-Debtor's obligations to him as well as, more generally, the entry of a discharge order in the Defendant-Debtor's bankruptcy case. The Court conducted a trial on the Plaintiff's adversary complaint on June 25, 2009 and, at the conclusion of trial, announced her ruling. The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as adopted and applied to this case by Federal Rule of Bankruptcy Procedure 7052.

**I. FINDINGS OF FACT**

**A. The Automobile Accident**

1.    The present dispute began with a tragic automobile accident in the early morning hours of November 20, 1994. The Plaintiff was a college sophomore who had

been working late on a student project. The Defendant was employed by a retail store and had been working late on an inventory of the goods at the store.

2. The Plaintiff and the Defendant were both driving home at the time of the accident. The Defendant fell asleep at the wheel, crossed a divided highway, and collided head-on with the Plaintiff's vehicle at approximately 4:15 a.m. on November 20, 1994. The Plaintiff suffered life-threatening injuries and was hospitalized for several days.

3. The Defendant was uninsured at the time of the accident. In 1996, the Plaintiff brought a civil action in state court against the Defendant for the damages he incurred in connection with the accident. The state court conducted a hearing on the matter on January 27, 1998. The Defendant failed to appear and, therefore, the state court entered a Final Judgment by Default against the Defendant.

4. The Final Judgment by Default awarded the Plaintiff a judgment against the Defendant in the principal sum of $28,725.20 with pre- and post-judgment interest at 10% per annum. The Plaintiff abstracted the judgment but has recovered nothing from the Defendant.

5. The Defendant testified that he was unaware that the Plaintiff had brought an action against him. The Defendant further testified that he did not become aware that a default judgment had been entered until 1998 or 1999. The Defendant was at that time employed as a mortgage underwriter.

### B. The Property Transfers

6. At trial, the Plaintiff presented evidence regarding the transfer of the Defendant's purported interest in three properties located in Arlington, Texas – the

property located at 1201 Bell Street, the property located at 1600 Wickford Drive, and the property located at 1704 Wickford Street. The primary dispute in this adversary proceeding involves the Defendant's contention that he was unaware of the transfers of his interest, if any, in these properties. The Defendant sought to establish at trial that his mother forged various documents relating to the properties prior to her death.

*1. 1201 Bell Street*

7. The Defendant was living with his family at 1201 Bell Street at the time of the accident. The Defendant testified that he and his mother had purchased this property together. The Defendant testified that there was a mobile home on the property for some period of time. According to the Defendant's testimony, the mobile home has been removed and the property is currently vacant.

8. In 1996, a Warranty Deed was executed by the Defendant purporting to transfer the Defendant's interest in the property located at 1201 Bell Street to the Defendant's mother. The Defendant denied that he signed the Warranty Deed and testified that his mother forged his signature without his knowledge. On October 25, 1999, the Defendant's mother executed a Warranty Deed transferring her interest in the property to the Defendant's brother, Brandon. On January 8, 2004, the Defendant's brother, Brandon, executed a Warranty Deed transferring half of his interest in 1201 Bell Street to his brother, Victor. The Warranty Deed dated January 8, 2004, was purportedly notarized by the Defendant's mother.

*2. 1600 Wickford Drive*

9. With respect to the property located at 1600 Wickford Drive, the Defendant testified that he purchased this property in 1995 and resided there for

approximately one year. The Defendant then transferred his interest in the property to his mother, and his mother assumed the mortgage. The Defendant did not receive any consideration from his mother in exchange for the conveyance.

10. The Defendant testified at trial that he conveyed the property located at 1600 Wickford Drive to his mother in 1996. The documentary evidence, however, suggests that the transfer was made at or around the time that he became aware of the Plaintiff's judgment against him.

11. In June 2006, the Defendant's mother executed a Warranty Deed transferring half of her interest in 1600 Wickford Drive to the Defendant's brother, Victor. The Defendant testified that his mother did this as part of her estate planning. The Defendant's mother, who was suffering from leukemia, was not in the real estate business.

*3. 1704 Wickford Street*

12. The Defendant's sister, Elizabeth, testified that she purchased the house located at 1704 Wickford Street in 2001. Elizabeth was twenty-three years old at that time. She testified that she purchased the house so that she and her young children would be near her mother, who was living nearby at 1600 Wickford Drive. Elizabeth subsequently remarried and moved to Alvarado, Texas. She is currently renting the house located at 1704 Wickford Street to a tenant. Elizabeth testified that she does not believe she has any equity in the property and that the rental proceeds she receives from the property are used to pay the mortgage.

13. On September 26, 2006, Elizabeth purportedly executed a Quitclaim Deed transferring half of her interest in the property located at 1704 Wickford Street to the

4

Defendant. Elizabeth testified that she did not sign this document and that her signature was forged by her mother. The Defendant testified that he did not receive a copy of the Quitclaim Deed and was unaware that his sister had purportedly conveyed an interest in the property to him.

14. On February 2, 2008, immediately prior to the Defendant's bankruptcy, a Warranty Deed was purportedly executed by the Defendant and his sister relating to the property located at 1704 Wickford Street. The Warranty Deed transferred the Defendant's interest in the property back to his sister, Elizabeth. The Defendant and Elizabeth testified at trial that their signatures on the Warranty Deed were forged. The Warranty Deed and Quitclaim Deed were both notarized by the Defendant's mother.

### C. The Defendant's Bankruptcy

15. The Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 25, 2008. On May 8, 2008, the Defendant filed his bankruptcy schedules and statements. These schedules and statements were made under oath as required by the Bankruptcy Code and Rules. *See* 11 U.S.C. § 521(a) (describing the debtor's duty to file schedules and statements); FED. R. BANKR. P. 1008 ("[a]ll petitions, lists, schedules, statements of financial affairs, [etc.] shall be verified or contain an unsworn declaration as provide in 28 U.S.C. § 1746.").

16. Although the Defendant testified that he was unaware that his mother had executed documents transferring his interest in 1201 Bell Street to his brother, Brandon, the Defendant did not disclose an interest in the property in his bankruptcy schedules. The Defendant also did not disclose the transfer of his purported interest in the property located at 1604 Wickford Street back to his sister, Elizabeth, in his bankruptcy

5

statements.  In particular, in response to Question No. 10 in his Statement of Financial Affairs, the Defendant answered "none" when asked to list "all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case."

## II. CONCLUSIONS OF LAW

1. A proceeding to determine the dischargeability of a particular debt or involving objections to a debtor's discharge raises a core matter over which this Court has jurisdiction to enter a final order.  *See* 28 U.S.C. §§ 157(b)(2)(I) and (J) and 1334.  In an action to determine the dischargeability of a particular debt, the objecting creditor has the burden of proof under a preponderance of the evidence standard.  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  Likewise, under Bankruptcy Rule 4005, the burden of proof is on the party objecting to the debtor's discharge.  *See* FED. R. BANKR. P. 4005.

### A. 11 U.S.C. § 523(a)(6)

2. In the parties' Joint Pretrial Order, the Plaintiff claims that the Defendant's actions in connection with the automobile accident were willful and malicious and, therefore, that his obligation to the Plaintiff under state court judgment is nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.  Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  In the Fifth Circuit, a "willful and malicious injury" is established under § 523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate or intentional action; or (2) there is

a subjective motive to cause harm by a party taking a deliberate or intentional action. *See Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 271 (5th Cir. 2005).

3. In *Corley v. Delaney (In re Delaney),* 97 F.3d 800 (5th Cir. 1996), the Fifth Circuit held that debts incurred when a debtor accidentally fired a gun while tapping the gun on the windshield of a car were dischargeable. *Id.* at 802-03. The Fifth Circuit explained that:

> Here, [the debtor] unquestionably acted intentionally when he loaded the shotgun, took it with him to the confrontation with [the creditor], and, with his finger on the trigger, twice tapped the barrel of the gun on the windshield of the car to get [the creditor's] attention. In contrast, however, the firing of the gun was neither deliberate nor intentional; on the contrary, it was wholly unintentional, even though possibly not wholly unforeseeable.... [T]he injury was not 'willful and malicious' on the part of [the debtor]: He neither intended the injury nor intentionally took action that was 'substantially certain' to cause the injuries that [the debtor] suffered.

*Id.* At the other end of the spectrum, in *Red v. Baum (In re Red)*, 96 Fed. Appx. 229 (5th Cir. 2004), the Fifth Circuit affirmed the bankruptcy court's determination that the debtor intentionally drove his car into a crowded bar and that the debtor's action was "substantially certain" to cause harm.

4. In this case, the Plaintiff has failed to establish by a preponderance of the evidence that the Defendant had any subjective intent to cause harm to the Defendant or anyone else when he got into his car to drive home in the early morning hours of November 20, 2004. The Plaintiff has also failed to offer any credible evidence to contradict the Defendant's testimony that he fell asleep at the wheel. The Defendant's decision to drive home was perhaps unwise or even to some degree negligent, but the Plaintiff has failed to establish that the collision was substantially certain to result at the time the Defendant made the decision. With respect to the fact that the Defendant was

driving without insurance, courts have generally held that the failure to insure a vehicle does not make a resulting debt nondischargeable under § 523(a)(6).  *See Broussard v. Fields* (*In re Fields*), 203 B.R. 401, 411-12 (Bankr. M.D. La. 1996) (collecting cases). *See also Gene Koury Auto Sales v. Westmoreland (In re Westmoreland)*, 31 Fed. Appx. 838 (5th Cir. 2002) ("The 'harm' element contemplated by the … intent prong cannot be fulfilled simply by driving without insurance - even when the driver or owner is contractually bound to carry insurance - because, absent an accident, driving without insurance does not cause injury; to conflate the two would confuse causation with damage.").

### B. 11 U.S.C. § 727(a)(4)(A)

5.      The Plaintiff raised several objections to the Defendant's discharge in the parties' Joint Pretrial Order.  In his closing arguments at trial, counsel for the Plaintiff focused on § 727(a)(4)(A) of the Bankruptcy Code.  The provision states that the bankruptcy court shall grant a debtor a discharge, unless: (4) the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account ...."  11 U.S.C. § 727(a)(4)(A).  Thus, to deny Debtor's discharge under § 727(a)(4)(A), the Plaintiff must prove, by a preponderance of the evidence, that:

  (i)     Debtor made a statement under oath;
  (ii)    The statement was false;
  (iii)   Debtor knew the statement was false;
  (iv)    Debtor made the statement with fraudulent intent; and
  (v)     The statement related materially to the bankruptcy case.

*See Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 177-78 (5th Cir. 1992). False oaths sufficient to justify a denial of discharge include a false statement or omission in the Defendant's schedules and statements.  *See id.*

6. With respect to a defendant-debtor's intent, "circumstantial evidence may be used to establish a pattern of concealment and nondisclosure." *Dubrosky v. Perlbinder (In re Dubrosky),* 244 B.R. 560, 572 (E.D. N.Y. 2000) (citations omitted). In particular, fraudulent intent may be inferred from an unexplained false statement. *In re Mascolo,* 505 F.2d 274, 276 (1st Cir. 1974). "Because a court may infer knowledge and fraudulent intent from the existence of a sworn false statement, once a sworn statement is shown to be false, the burden to prove that the statement or omission was an honest mistake shifts to the debtor." *Poolquip McNeam, Inc. v. Hubbard (In re Hubbard)*, 96 B.R. 739, 742 (Bankr. W.D. Tex. 1989) (citing *Masculo*). *See also, e.g., Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir. 1987); *Law Offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt),* 261 B.R. 54, 59 (Bankr. M.D. Fla. 2000); *In re Brenes,* 261 B.R. 322, 334 (Bankr. D. Conn. 2001).

7. The accuracy and completeness of information contained in a debtor's schedules and statement of financial affairs is essential to the successful administration of the case, and any deliberate omissions may result in the denial of a discharge. *See In re Lightfoot*, 152 B.R. at 149. As the Fifth Circuit has noted, "[i]n determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Beaubouef,* 966 F.2d at 177. The debtor must make full disclosure, "even of seemingly worthless assets." *In re MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 881 (Bankr. S.D. N.Y. 1990). *See also Chalik v.*

*Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (discussing the need to disclose even worthless assets).

8.  Here, the circumstantial evidence reveals a pattern of concealment by the Defendant. The Defendant's testimony that he was unaware of the judgment entered against him at or around the time he transferred his interest in 1600 Wickford Drive to his mother was not credible. Likewise, the Defendant's testimony that he was unaware of the conveyance of his interest in 1704 Wickford Street back to his sister was not credible. With respect to the property located at 1201 Bell Street, if the Defendant was truly unaware that his mother had forged documents transferring his interest in this property to his brother, then he should have listed his interest in that property in his bankruptcy schedules.

9.  The Court, having considered the testimony and documentary evidence presented at trial, finds and concludes that the Defendant made a false statement in his Statement of Financial Affairs by failing to disclose the transfer of his interest in the property located at 1704 Wickford Street. The Defendant's failure to disclose this transfer was intentional, and the transfer was made and concealed for the purpose of frustrating the efforts of the Plaintiff to collect his judgment. Further, the Court finds and concludes the Defendant's false statement in his Statement of Financial Affairs is material to his bankruptcy case.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Defendant's general discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).[1] To the extent any

---

[1] In light of the Court's ruling, the Court need not address the Plaintiff's other claims for denial of the Defendant's discharge under § 727(a) of the Bankruptcy Code.

10

finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Signed on 09/17/2009

*Brenda T. Rhoades*    SD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE